THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff and Respondent-Appellant, *v.* LAURENCE JONES, a/k/a Norton Jones, Defendant and Petitioner-Appellee.

First District (5th Division)    Nos. 79-1784, 80-493 cons.

Opinion filed August 28, 1981.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Leland E. Shalgos, of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of possession of codeine (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)) and sentenced to three years imprisonment. Defendant later filed a post-conviction petition alleging that the statute under which he was convicted was unconstitutional as violative of equal protection and due process. (U.S. Const., amends. V, XIV.) The trial court granted this petition, but execution of the order was stayed. Defendant appeals from his conviction, and the State appeals from the order granting defendant post-conviction relief. Both appeals are consolidated for our review.

The State contends that the statute involved is constitutional and that the trial court therefore erred in granting defendant's post-conviction petition. Defendant contends that (1) the trial court erred in denying his motion in arrest of judgment and his motion to dismiss the indictment; (2) he was not proven guilty beyond a reasonable doubt; and (3) the statute under which he was convicted is unconstitutional

The evidence adduced at defendant's trial is basically undisputed. On April 1, 1977, at 8 p.m., Chicago police officers Joseph Cannon and Richard Hoffman observed defendant in the vicinity of 5036 W. Madison Avenue. Several people individually walked up to defendant, had a conversation with him and then walked away. On each occasion, defendant walked over to a nearby gold, 1969 Buick, opened the trunk and took out a bottle of red liquid. He then returned, handing each individual one of the bottles. Defendant repeated these procedures a total of three times with three different persons.

After observing defendant for about 30 minutes, the officers pulled their car alongside the sidewalk where defendant was standing, took a bottle of the liquid from him and placed him under arrest. The search of defendant produced a key which opened the trunk of the Buick. Inside the trunk, the officers discovered a paper bag containing six unmarked bottles of a red liquid. Defendant and the evidence were then taken to the 15th District Police Station. There, the bag and bottles were sealed and placed into a narcotics safe.

The parties stipulated that if Christine Provost, a chemist for the Chicago Police Department, were called as a witness, she would testify that she examined the seven bottles of red liquid that were recovered from defendant. The first bottle tested contained about 85 milliliters, and the remaining six bottles each held about 95 milliliters of a substance containing codeine. The parties further stipulated that the liquid tested was the same type of substance which can be purchased with a prescription in a drug store, and is commonly used for medicinal purposes as cough syrup. After the State rested its case, defendant moved for a directed verdict, arguing *inter alia*, that the State failed to prove the proportion of codeine contained in the mixture. The trial court denied this motion. One witness was produced on defendant's behalf. Barbara Frazier-Weiner, Chief Counsel for the Illinois Dangerous Drug Commission, testified as to her interpretation of the Illinois Controlled Substances Act. (Ill. Rev. Stat. 1975, ch. 56½, pars. 1100-1603) (the Act).) That testimony, however, is not relevant to the disposition of this case.

OPINION

Initially, we find it appropriate to examine defendant's contention that he was not proven guilty beyond a reasonable doubt. Because we believe that the State has failed in its burden to do so, consideration of the other issues raised by both parties is unnecessary.

The information in this case charges that defendant committed the offense of possession of a controlled substance in violation of chapter 56½, section 1402(b), for his conduct on April 1, 1977, in knowingly and

unlawfully possessing "a quantity of a substance containing a certain controlled substance, to wit: codeine." The information does not state under which schedule of the Act that the controlled substance falls. Section 402 of the Act provides as follows:

"Except as otherwise authorized by this Act, it is unlawful for any person knowingly to possess a controlled substance. Any person who violates this section with respect to:

(a) the following controlled substances and amounts, notwithstanding any of the provisions of subsections (b) or (c) to the contrary, is guilty of a Class I felony for which an offender may not be sentenced to death. The fine for violation of this subsection (a) shall not be more than $100,000;

\* \* \*

(b) any other amount of a controlled substance is guilty of a Class 3 felony." Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b).

In order to sustain its burden of proof in this case, the State was required to prove beyond a reasonable doubt that defendant knowingly possessed "any other amount of a controlled substance" in violation of section 402(b). The critical question in this case is whether the State proved that the substance in question was a "controlled substance" as defined by the Act. A controlled substance is defined as a "drug, substance, or immediate precursor in the schedules of Article II of this Act." (Ill. Rev. Stat. 1975, ch. 56½, par. 1102(g).) There are five such schedules under which drugs may be classified. (Ill. Rev. Stat. 1975, ch. 56½, pars. 1204, 1206, 1208, 1210, 1212.) Basically, the statutory scheme in promulgating these schedules establishes a gradient. For instance, substances listed under schedule I have the highest potential for abuse and no currently accepted medical use. (Ill. Rev. Stat. 1975, ch. 56½, pars. 1203, 1204.) At the other end of the scale are schedule V substances, or those having the lowest potential for abuse, currently accepted medical use, and the least possibility of physiological or psychological dependence if abused. (Ill. Rev. Stat. 1975, ch. 56½, pars. 1211, 1212.) Schedule II, III and IV contain substances which fall between the two extremes, depending upon the properties that the drug possesses in relation to the criteria just mentioned. If a substance is not contained in one of the five schedules, then it is not a controlled substance under Illinois law.

Although there appeared to be much confusion at trial as to the manner in which the substance found in defendant's possession was to be classified, the State asserted that it fell under schedules II, III and V. We note that part of this confusion, at least as to the scope of schedule II drugs, is explained by the prosecutor's erroneous reliance at trial on an amended statute which was not in effect at the time of defendant's

alleged offense. In April of 1977, when defendant was arrested, codeine was not listed as a schedule II drug. Schedule II drugs were defined in relevant part as follows:

"(b) Any of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis;

(1) opium and opiates, and any salt, compound, derivative or preparation of opium or opiate, but excluding maloxone hydrochloride." Ill. Rev. Stat. 1975, ch. 56½, par. 1206.

The statute was amended by Public Act 80-472, effective September 3, 1977, to specifically include codeine under schedule II. The amended statute states the following:

" (b) Unless specifically excepted or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:

(1) opium and opiates, and any salt, compound, derivative or preparation of opium or opiate, excluding apomorphine, dextrorphan, nalbuphine, naloxone, and naltrexone, and their respective salts, but including the following:

\* \* \*

(7) Codeine." Ill. Rev. Stat. 1977, ch. 56½, par. 1206.

The State now argues that codeine was originally included under schedule II before the statute was amended, and was thus a "controlled substance", when possessed by defendant. More specifically, the State argues that codeine is an opium derivative and, therefore, falls within the meaning of the phrase, "opium and opiates, and any salt, compound, derivative or preparation of opium or opiate" under the original statute. In support thereof, the State cites Stedman's Medical Dictionary (4th unabr. ed. 1976), which defines codeine as:

"methylmorphine; morphine monomethyl ether \* \* \* obtained from opium, which contains 0.7 to 2.5 per cent, but usually made from morphine. Used as an analgesic and antitussive; drug dependence (physical and psychic) may develop \* \* \*."

■■ Our determination as to whether codeine was originally included under schedule II (at the time of defendant's alleged offense) requires an application of some fundamental rules of statutory construction. The primary rule in construing a statute, be it criminal or civil, is to give effect to the legislature's intent. (*People v. Taylor* (1976), 35 Ill. App. 3d 418, 342

N.E.2d 96.) If the legislature's intent in enacting a penal statute is in any way clouded or uncertain, the statute is to be strictly construed in favor of the accused, and nothing beyond its obvious and literal meaning may be taken by intendment or implication to operate against a defendant. (*People v. Rogers* (1980), 86 Ill. App. 3d 1092, 408 N.E.2d 769.) The addition of a new provision in a statute by amendment is an indication of the absence of its implied or prior existence. *People ex rel. Scott v. Cardet International* (1974), 24 Ill. App. 3d 740, 321 N.E.2d 386.

■■ Although the legislature's intent under the Act was to "deter the unlawful and destructive abuse of controlled substances" (Ill. Rev. Stat. 1975, ch. 56½, par. 1100(2)), it is also sought to "acknowledge the functional and consequential differences between the various types of controlled substances and provide for correspondingly different degrees of control over each of the various types." (Ill. Rev. Stat. 1975, ch. 56½, par. 1100(4).) More importantly, the legislature saw fit to only classify certain substances on the various schedules as "controlled substances" subject to the enforcement provisions of the Act. (Ill. Rev. Stat. 1975, ch. 56½, par. 1102(g).) These schedules undergo constant revision by the Dangerous Drugs Commission; various substances are added, deleted or rescheduled depending upon new scientific evidence concerning their potential for abuse. (See Ill. Rev. Stat. 1975, ch. 56½, par. 1201.) Based upon the foregoing, it is evident that substances must be specifically enumerated on the exhaustive and detailed schedules to be considered included therein. Therefore, in interpreting the scope of schedule II in a light favorable to the accused, we cannot presume that it included codeine at the time of the alleged offense. Moreover, we believe that the amendment of schedule II in September of 1977 to specifically include codeine is indicative of the absence of the substance in the earlier schedule. Having determined that codeine was not a "controlled substance" under schedule II, we turn our attention to the question as to whether the State proved that the substance possessed by defendant was contained on schedules III and V.

In April of 1977, schedule III listed the following prohibited substances:

(e) Any material, compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs, or any salts thereof:

(1) not more than 1.8 grams of codeine, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit, with an equal or greater quantity of an isoquinoline alkaloid of opium;

(2) not more than 1.8 grams of codeine, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit, with one

or more active non-narcotic ingredients in recognized therapeutic amounts; * * *." (Ill. Rev. Stat. 1975, ch. 56½, pars. 1208(e)(1), (2).) Schedule V similarly banned the following:

"(b) Any compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs, which also contain one or more non-narcotic active medicinal ingredients in sufficient proportion to confer upon the compound, mixture or preparation, valuable medicinal qualities other than those possessed by the narcotic drug alone;

(1) not more than 200 milligrams of codeine, or any of its salts, per 100 milliliters or per 100 grams." Ill. Rev. Stat. 1975, ch. 56½, par. 1212(b)(1).

■■ We believe that the State likewise failed to prove beyond a reasonable doubt that the substance possessed by defendant was a "controlled substance" under schedules III and V. The stipulated evidence was that the mixture in question "contained codeine." However, an examination of schedules III and V reveals that the State must prove, as an element of the offense, that the substance contains a specific proportion of codeine combined with another ingredient. For instance, schedule III requires proof of a particular quantity of codeine "with an equal or greater quantity of an isoquinoline alkaloid of opium," or "with one or more active non-narcotic ingredients in recognized therapeutic amounts." (Ill. Rev. Stat. 1975, ch. 56½, pars. 1208(e)(1), (2).) Similarly, under schedule V, there must be evidence of a ratio of codeine to "one or more non-narcotic active medicinal ingredients in sufficient proportion to confer upon the compound, mixture or preparation, valuable medicinal qualities other than those possessed by the narcotic drug alone." (Ill. Rev. Stat. 1975, ch. 56½, par. 1212(b)(1).) Since the State failed to produce evidence that the substance possessed the characteristics mandated under schedules III and V, defendant was not proven guilty beyond a reasonable doubt of possession of a controlled substance.

Our holding in the present case cannot be interpreted as imposing a new requirement on the State to prove a precise concentration of codeine in a substance in order to establish guilt under section 402(b) of the Act. (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b).) We only find that the State failed, under the law that existed at the time of defendant's conduct, to establish that the substance he possessed was a controlled substance under the Act. When the legislature amended schedule II in September of 1977 to specifically include codeine, however, it made no requirements for proof of the presence of a specific proportion of codeine combined with another substance. Instead, under the present law it is sufficient that the State prove that the substance "contained codeine" in order to fall within

the meaning of schedule II. In short, the same evidence adduced by the State at defendant's trial would today support a conviction if his conduct occurred subsequent to the amendment of schedule II.

In light of this finding, we need not reach the other issues raised by the parties. Accordingly, the judgment of the circuit court is hereby reversed.

Reversed.

SULLIVAN, P. J., and WILSON, J., concur.